**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

M.B. *an infant by parent and natural guardian*
MAUREEN SCOTT and MAUREEN SCOTT,
*individually*,

                    Plaintiffs,

      - v -                             Civ. No. 1:12-CV-825
                                            (GTS/RFT)

CSX TRANSPORTATION, INC.,

                    Defendant

**APPEARANCES:**                        **OF COUNSEL:**

JOHN A. CORNING LAW OFFICE      JOHN A. CORRING, ESQ.
*Attorney for Plaintiffs*
52 Duane Street - Seventh Floor
New York, New York 10007

ECKERT SEAMANS LAW FIRM        LAWRENCE R. BAILEY, JR., ESQ.
*Attorney for Defendant*
10 Bank Street, Suite 700
White Plains, New York 10606

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM DECISION and ORDER

     Experience and intuition strongly suggest that compliance with the Scheduling and Discovery Orders in this case would ultimately have to be addressed by a motion. Over an eight-month period, amendments to the Scheduling Order were granted in order to mollify the Plaintiffs' failure to timely serve expert reports. Finally exasperated with Plaintiffs' repeated and fundamental anemic abidance with the

Discovery/Scheduling Orders, Defendant files a Motion to Preclude Plaintiffs' Experts, pursuant to both the Federal Rules of Civil Procedure and this District's Local Rules, and it seeks an extension of time to serve its expert disclosures. Dkt. No. 36, Def.'s Mot. to Preclude, dated Dec. 2, 2012. Plaintiffs oppose Defendant's Motion. Dkt. No. 38, John A. Corring, Esq., Decl., dated Dec. 16, 2013. Notwithstanding the parties' familiarity with the facts of this Motion, in order to appreciate the Court's Decision, a history of this litigation is warranted.

## I. CASE HISTORY

Originally, this action was commenced in New York State Supreme Court, County of Ulster, on or about March 23, 2012. Because of diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), this lawsuit was moved to the Northern District of New York. Dkt. No. 1, Notice of Removal, dated May 18, 2012. Succinctly, it is alleged that on November 27, 2010, while crossing the railroad tracks located in Kingston, New York, infant M.B. was struck by a train owned and operated by the Defendant. *See* Dkt. No. 1-1, Compl. at ¶¶ 10-17.

Initially, a Scheduling Order would have been issued on or about October 4, 2012, however, the Rule 16 Conference was adjourned for purposes of pursuing a settlement conference. The settlement conference held on October 26, 2012, was unsuccessful requiring the Court to re-schedule the Rule 16 Conference. Customarily

during Rule 16 conferences, the Court raises issues relative to medical proof and experts with the parties . Realizing the gravity of M.B.'s injuries, the Court advised Plaintiffs' Counsel that if damages encompassed an opinion regarding permanent injuries, a full expert report, pursuant to FED. R. CIV. P. 26(a)(2)(A) & (B), would be required. Consistent with the Civil Case Management Plan, Dkt. No. 8, and afer further discussion with the parties, a Scheduling Order was issued on October 26, 2013. Dkt. No. 13, Scheduling Order. The Scheduling Order advised the parties that the discovery deadline would be July 31, 2013, and that Plaintiffs' expert report would be due ninety (90) days prior to the expiration of the discovery period; said date for this disclosure would have been April 30, 2013. *Id.* at p. 2; *see also* Dkt. No. 36-2, Ex. A, Scheduling Order.

On February 21, 2013, the Defendant informed the Court that even though four months had elapsed since the issuance of the Scheduling Order, no discovery had occurred. Dkt. No. 14, Def.'s Status Rep., dated Feb. 21, 2013. Plaintiffs brushed off Defendant's claim nothing however that "discovery is far from complete" and thus requested a "short extension." Dkt. No. 17, Pls.' Status Rep., dated Feb. 28, 2013. After holding a telephone conference with the parties, the Court issued a Text Order extending the discovery deadline an additional sixty (60) days to September 30, 2013, and further noting that this Order extending the deadline would be a "final extension."

Dkt. No. 19, Text Order, dated Mar. 7, 2013. By extending the discovery deadline, Plaintiffs were obligated to serve their expert reports by June 30, 2013.

In June, as the parties approached the modified discovery deadline, the Defendant was compelled to alert the Court that discovery, once again, had been stymied. The Defendant claimed that Plaintiffs had not timely served the required authorizations, medical records, and, interestingly, Plaintiffs had not served a single demand on the Defendant. Dkt. No. 20, Def.'s Lt.-Mot., dated June 12, 2013. Responding to Defendant's Letter-Motion, Plaintiffs proffered excuses for their delay in fully complying with the Defendant's Demands, asserted that "the September 30, 2013 cut off discovery is sufficient and will be met," and yet sought, once again, "a short extension for the exchange of expert witness information (engineering and medical)." Dkt. No. 23, Pls.' Lt.-Br., dated June 17, 2013.[1]

Reacting to the parties' correspondence, the Court set up another discovery telephone conference. After a lengthy discourse, the Court issued a Discovery Order amending, once again, the Scheduling Order in order to accommodate Plaintiffs' discovery lapses. The revised discovery deadline was set for October 30, 2013, and Plaintiffs' expert reports were required to be served by July 22, 2013. Dkt. No. 25,

---

[1] In addition to their excuses, promises, and requests, Plaintiffs' Letter-Brief further represented that all they needed was a deposition of the train operator and would submit "within the next three weeks" the video of the incident to their expert. Dkt. No. 23, Pls.' Lt.-Br., dated June 17, 2013.

Discovery Order, dated June 20, 2013. This Discovery Order also noted that there would be "no further extensions." *Id*.

Now, becoming a rite of passage with this case, the Defendant filed another Status Report outlining how the infant Plaintiff failed to timely appear for his independent medical examination, requiring it to be rescheduled, and noting that, notwithstanding the extension of the discovery and expert deadlines, no expert disclosure was served on July 22, 2013, nor, by the date of the Status Report. Dkt. No. 26, Def.'s Lt.-Mot., dated Sept. 27, 2013. Because of Plaintiffs' inaction and omissions, the Defendant sought to preclude Plaintiffs from offering expert testimony at trial. *Id*. And, once again, the Court had to resort to yet another telephone conference with the expectations of ascertaining why there exists so many issues relevant to discovery, and expert disclosures in particular. On October 9, 2013, during the telephonic conference, which was held on the record, Plaintiffs advised the Court that they had not conducted the deposition of the operating locomotive engineer as previously promised, *see supra* note 1, and, as expected, no expert reports were served nor forthcoming in the near future. The Court's exasperation rings loudly in the Text Order amending the Scheduling Order once again:

> Considering that the Court had already granted an extension of the discovery deadline and stated that there would be no further extensions . . . the Court was not inclined to grant yet another extension of the deadlines. However, the Plaintiffs had yet to serve expert reports and

pursuant to the current Scheduling Order, said reports are woefully late and subject to preclusion. Precluding a party from serving an expert report is a drastic remedy to be avoided, if possible. In order to avoid this remedy, another extension, albeit very brief is warranted. The Court relents and will grant this FINAL amendment to the Scheduling Order . . . . the engineer's deposition shall be completed by October 30, 2013 . . . [and] Plaintiffs' expert report shall be served by November 22, 2013 . . . . NO FURTHER EXTENSIONS. SO ORDERED.

Text Order, dated Oct. 9, 2013.

Notwithstanding the Court's repeated admonitions, the pattern of lassiez-faire discovery persisted. Once again, the Defendant filed another Status Report informing the Court that Plaintiffs did not serve any expert report until November 25, 2013. Dkt. No. 34, Def.'s Lt.-Mot., dated Nov. 26, 2013. Although Plaintiffs identified their liability and medical experts, neither report contained any expert opinion. Plaintiffs' rejoinder was that a supplemental disclosure would be served on or before December 15, 2013. *Id*. Weighing this new revelation, the Court did not hold another telephone conference, but, instead, issued an order granting the Defendant permission to file a motion to preclude. Dkt. No. 35, Text Order, dated Nov. 27, 2013. Within less than a week, the Defendant filed a Motion to Preclude. Dkt. No. 36.

## II. LEGAL STANDARDS

### A. Rules Pertaining to Expert Disclosure

Under the current expert reporting rules, two concurrent disclosure schemes exist. The principle disclosure rule requires a party to identify "any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). If such opinion testimony is to be offered at trial, the witness must provide a written report that contains

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness' qualifications . . .; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trail or by deposition; and (vi) a statement of the compensation to be paid.

FED. R. CIV. P. 26(a)(2)(B).

The secondary reporting scheme can be found in Rule 26(a)(2)(C): <u>[u]nless otherwise stipulated or ordered by the court</u>, if the witness is not required to provide a written report, this disclosure must state [] the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 [] and a summary of the facts and opinions to which the witness is expected to testify." (emphasis added).

Notwithstanding the 2010 Amendments to Rule 26(a)(2) creating the less

detailed report, there is no specific reference nor guidance as to how the various opinions from a treating physician should be captured. For treating physicians, opinions can be readily gleaned from the medical reports that generally encompass and expose the course of treatment and, thus, an abbreviated report makes sense. Generally speaking the parameters of that testimony are limited to the care and treatment of the patient. But, where the doctor is rendering an opinion based upon a reasonable degree of medical certainty, it would seem that the abbreviated report falls short of adequate disclosure. When absent from the medical records, an inventive litigant could conceal a host of very critical opinions or analyses that require the accompanying standard of a reasonable degree of medical certainty, which would not be cured by the less detailed report. Because permanency is rarely disclosed in medical records, an opposing party could be blindsided by an underdevelopment of the disclosure and the scientific basis upon which it rests. And precisely for this reason, it is the standing order of this Court to require the much more detailed report so that all facts and opinions are known to the parties. *Bartnick v. CSX Transp. Inc.*, 2013 WL 1113991 (N.D.N.Y. Mar. 18, 2013); *accord, Robinson v. Suffolk Cnty. Police Dep't*, 2011 WL 4916709 (E.D.N.Y. Oct. 17, 2011) (requiring a rule 26(a)(2)(A) & (B) report where the treating physician may be testifying as to causation); *Lamere v. New York State Office of the Aging*, 223 F.R.D. 85, 89

(N.D.N.Y. 2004) ("It is indeed certain that a treating physician who has not complied with the reporting requirement of Rule 26(a)(2)(B), should not be allowed to render opinions outside the course of treatment and beyond the reasonable reading of the medical records.").

Exactitude aside, the import of the Court's ruling on treating physician/expert disclosure was shared with Plaintiffs each time the multiple amendments to the Scheduling Order were granted. At this juncture, at least in terms of the treating physician report served upon Defendant, Plaintiffs' submission fails to comply with either provision of Rule 26(a)(2). *See* FED. R. CIV. P. 26(a)(2)(B) & (C).

### B. Sanctions Pursuant to Rules 16(f) and 37

To be clear as to what is required for the production of expert witness information, this District's Local Rules provide additional redundancy:

> There shall be binding disclosure of the identity of expert witnesses. The parties shall make such disclosure, including a curriculum vitae and, unless waived by the other parties, service of the expert's written report pursuant to Fed. R. Civ. P. 26(a)(2)(B), before the completion of discovery in accordance with the deadlines contained in the Uniform Pretrial Scheduling Order or any other Court order. **Failure to comply with these deadlines may result in the imposition of sanctions, including the preclusion of testimony, pursuant to Fed. R. Civ. P. 16(f)**. . . . If a party expects to call a treating physician as a witness, the party must identify the treating physician in accordance with the timetable provided in the Uniform Pretrial Scheduling Order or other Court order.

N.D.N.Y.L.R. 26.3 (emphasis added).

Turning to Rule 16(f), a court may issue any just order, including those authorized by Rule 37(b)(2), for a party's failure to obey a scheduling order or other pretrial order. If sanctions are imposed under Rule 16(f), "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

There are two provisions within FED. R. CIV. P. 37 which permit the rendering of sanctions. If a party fails to comply with an order of discovery, the court may issue such orders in regard to the failure, which may be just. *See* FED. R. CIV. P. 37(a)(3)(A) & 37(b)(2)(A).[2] Furthermore, FED. R. CIV. P. 37(b)(2)(A) specifically permits another order to be levied for failure to obey a discovery order by: (1) designating facts to be taken as established for the purpose of the action; (2) refusing to allow a party to support or oppose claims or defenses or prohibit the introduction of evidence with regard to those matters; (3) striking pleadings or staying the proceeding until the order is obeyed, or dismissing the action of the disobeying party; and (4) treating the failure to obey the order as contempt. In addition thereto, the

---

[2] An incomplete disclosure "must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

failing party may be directed to pay reasonable expenses including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. FED. R. CIV. P. 37(d)(3).

Similarly, under FED. R. CIV. P. 37(b)(2)(C), if a motion, pursuant to Rule 37(a), is made to compel disclosure and it is granted, or the disclosure is provided after the motion is filed, the court shall award reasonable expenses incurred in making the motion, including attorney fees. Nonetheless, despite this strong language, sanctions are not appropriate if the motion was filed without the movant first making a good faith effort to obtain the disclosure, or late disclosure was substantially justified, or circumstances make the award of expenses unjust.

The aim of a sanction is "1) to ensure that the offending party will not be able to profit from the failure to comply; 2) to provide a strong deterrence to the non-compliant party and to others in the public; and 3) to secure compliance with an order." *EverHome Mortg. Co. v. Charter Oak Fire Ins. Co.*, 2011 WL 4056043, at *2 (E.D.N.Y. Apr. 18, 2011) (quoting *Hudson v. IRS*, 2007 WL 2295048, at *7 (N.D.N.Y. Mar. 27, 2007)); *see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

The imposition of sanctions under Rule 37 is within the discretion of the court.

*Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d. Cir. 1994); *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 765 (2d. Cir. 1990); *LeGrande v. Adecco*, 233 F.R.D. 253, 256-57 (N.D.N.Y. 2005) (citing, *inter alia*, *Scott v. Town of Cicero Police Dep't*, 1999 WL 102750 (N.D.N.Y. Feb. 24, 1999)). "Before imposing sanctions the court may consider: (1) the history of the party's failure to comply with court orders; (2) whether the party violating the order was given ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the non-complying party was warned and given an opportunity to argue the impending sanctions; (5) the prejudice to the adversary caused by the failure to comply; (6) whether the document at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility." *Adelman v. Hobbie*, 2006 WL 2639359, at *3 (N.D.N.Y. Sept. 13, 2006) (citing, *inter alia*, *Momah v. Messina Mem'l. Hosp.*, 1998 WL 129045, at *5 (N.D.N.Y. Mar. 6, 1998)).

## III. ANALYSIS

Plaintiffs' conduct during discovery, especially regarding compliance with multiple Scheduling and Discovery Orders, has been deplorable. Even if great solicitude is extended to Plaintiffs, that cannot elevate Plaintiffs' abject nonconformity with the discovery rules. Even when considering the factors listed above, none inure to Plaintiffs' benefit.

When this action was commenced approximately two years ago, and knowing the gravamen of the claim and the gravity of the injuries, Plaintiffs' Counsel knew or had to have known that he would not be able to prove Plaintiffs' causes of action without the assistance of experts, especially medical experts. Even if Counsel did not realize then that experts were necessary, he cannot gainsay that he knew the purpose of experts and the importance of their timely disclosure when the Scheduling Order was issued, or after the four amendments thereto were granted, or after each telephone conference prior to amending the Scheduling Order, or even after each Letter Request written by the Defendant. Each amendment to the Scheduling Order extended tremendous lenity to Plaintiffs' haphazard compliance with their discovery obligations. Even when considered in a vacuum, Plaintiffs were benevolently extended a bountiful continuance to comply with expert discovery. That duration -- from April 30 to November 22, 2013 -- amounted to an additional eight months for Plaintiffs to meet their obligation, and yet they blithely ignored statutes, court orders, and local rules. Sadly, Plaintiffs cannot even mount any substantial justification for their noncompliance other than to plea for the Court to deploy its discretion "in the interest of justice." Dkt. No. 38, John A. Corring, Esq. Decl., dated Dec. 16, 2013, at ¶ 8.[3]

---

[3] Plaintiffs' Counsel did not even attempt to muster a reasonable legal argument against
(continued...)

With regard to medical expert testimony, on November 25, 2013, Plaintiffs served a report that does not provide, *inter alia*, a complete statement of all opinions the witness will express at trial, the facts or data considered by the witness in forming the opinion, nor is it executed by Dr. Cristofaro. Dkt. No. 36-6, Dr. Cristofaro's Expert Rep. Under either Rule 26(a)(2)(B) or (C), this Report is woefully inadequate. An inadequate report is no different than no report at all.

Plaintiffs' liability expert Nicholas Bellizzi's November 22, 2013 Report suffers from similar vacuity; no opinions were expressed, no facts were provided, and Bellizzi did not sign the Report. Dkt. No. 36-7, Nicholas Bellizzi Expert Rep. Obviously, this Report is unsatisfactory. However, attached to Plaintiffs' Counsel's Declaration is Bellizzi's Accident Report, dated December 14, 2014, which was filed two weeks after the Defendant filed this Motion. Dkt. No. 36-8. Combined with the November 22nd Report, this belated Report appears to satisfy Plaintiffs' disclosure requirements under Rule 26(a)(2)(B). This latter Report provides the absent facts and opinion as

---

[3](...continued)
Defendant's Motion. Plaintiffs' Memorandum of Law in Opposition comprises three abbreviated paragraphs, "a paper-thin" riposte to Defendant's well-developed Motion. Dkt. No. 38-3, Pls.' Mem. of Law, dated Dec. 16, 2013. Plaintiffs only argue that this scenario is very similar to those facts found in *Bartnick v. CSX Transp. Inc.*, 2013 WL 1113991 (N.D.N.Y. Mar. 18, 2013), where the Court did not grant preclusion. Granted that *Bartnick* and this case are similar to the extent both plaintiffs belatedly and inadequately served expert reports, yet they are remarkably distinguishable with regard to the length of time and degree of the noncompliance. Here, Plaintiffs' omissions are far more egregious.

to what may have occurred on November 27, 2010.[4]

Whether the Court relies upon either Rule 16(f) or Rule 37(b), sanctions are warranted. Under Rule 16(f), Plaintiffs' failed innumerable times in obeying Scheduling and Discovery Orders. No substantial justification for repeated noncompliance can be found. Plaintiffs cannot elude the impositions of sanctions, including the imposition of costs, fees, and attorney fees. Weighing Rule 37(b) and court precedents, a similar result must ensue. The record is replete with ample opportunities for Plaintiffs to comply with the Court's Orders. There is an inauspicious history of Plaintiffs' failure to comply with Orders. Plaintiffs were repeatedly warned of the consequences and even given an opportunity to argue against the impendency of sanctions. The Defendant has been prejudiced by the noncompliance and without fully well-versed expert reports, it would be hamstrung in addressing testimonial opinions under Rules of Evidence 702, 703, and 705. And, lastly, only the Plaintiffs are to blame for this discovery debacle. As noted above, there is a clear absence of any substantial justification for this behavior. Accordingly, sanctions are justified.

## IV. SANCTIONS

---

[4] Whether this report can survive a *Daubert* motion is yet to be seen. *See Daubert v. Merrell Dow Pharms., Inc.*, 507 U.S. 904 (1993).

As much as it pains the Court to levy sanctions, it is compelled to do so. Without sanctions, the Court would countenance Plaintiffs' misconduct and allow them to profit from their failure to comply. And, unless sanctions are imposed, there would be no strong deterrence to these Plaintiffs or others to honor court orders. The imposition of sanctions is within the discretion of the Court and both Rule 16(f) and Rule 37(b) provides several options. The sanctions here will vary because of the degree of disclosure from each of Plaintiffs' experts.

Plaintiffs have finally served an adequate liability report, albeit terribly untimely and probably would not have occurred without significant effort from the Defendant and the filing of this Motion. Nevertheless, there is an adequate liability report, thus, the Court will not preclude it because of Plaintiffs' noncompliance. Rather the Court will impose costs and other sanctions. Rule 37(b)(2)(C) directs that a "court **must** order the disobedient party, the attorney advising the party, or both to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." (emphasis added). The Court has previously noted that there is no substantial justification for Plaintiffs' Counsel's disobedience nor do we find that there are circumstances making the awarding of expenses unjust. Accordingly, with regard to the Defendant filing a Motion to Preclude, Plaintiffs' Counsel shall pay Defendant the

sum of $900.00 by **March 5, 2014**, or interest at the rate of nine (9) percent per annum will be charged.  Additionally, Plaintiffs shall bear all costs related to producing Nicholas Bellizzi for a deposition by the Defendant.  Those costs may include Bellizzi's expert fee and transportation costs to and from Defendant's Counsel's office, the stenographer's fees, and the costs of all deposition transcripts.

Turning to Dr. Cristofaro, he is precluded from testifying as an expert.  The Court will not grant Plaintiffs yet another opportunity to proffer a proper expert report. There is no cure acceptable at this late juncture of the litigation. Dr. Cristofaro is now relegated to being a fact witness, but there are parameters as to the scope of his testimony. He may testify as to the care and treatment of M.B.  He may testify as to his diagnosis and prognosis based upon the Doctor's observations and as reflected in the medical records, but not as to the permanency of any injury.  He may not render any opinion outside the scope of the treatment and beyond a reasonable reading of the medical records. *Lamere v. New York State Office for the Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004). Dr. Cristofaro's testimony with regard to causation is limited to the history and information reflected in the medical records. Plaintiffs shall bear the cost of producing Dr. Cristofaro for a deposition by the Defendant.  Those costs are identified immediately above.

Lastly, the Court grants the Defendant's Request for an opportunity to serve its

expert reports. Evidently, this requires the Scheduling Order to be amended, again. The Defendant's expert reports shall be served by **March 20, 2014.** No rebuttal experts will be permitted. Depositions of the experts shall be completed by **April 30, 2014**, except the Defendant may depose Dr. Cristofaro prior to the date its expert reports are due. The final day to file dispositive motions is **May 30, 2014.** No other discovery is permitted.

    **IT IS SO ORDERED**.

January 31, 2014
Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge